IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | 1:16cr23 |
| | ) | **Electronic Filing** |
| **DAVID EDWARD PALO** | ) | |

# OPINION

On July 12, 2016, a grand jury returned a twenty-seven count indictment against David Edward Palo ("defendant") charging him at count one with Health Care Fraud, from in and around January 2008 to in and around June 2014, in violation of 18 U.S.C. § 1347 and at counts two through twenty-seven with making false statements relating to health care matters, on specified dates between January 11, 2012, and February 5, 2013, in violation of 18 U.S.C. § 1035(a)(2). Presently before the court is defendant's motion to dismiss counts 2 through 27. For the reasons set forth below, the motion will be granted in part, taken under advisement in part and denied in part.

The indictment charges at count one that defendant was a licensed dentist practicing in the Western District of Pennsylvania who specialized in oral surgery. Indictment (Doc. No. 1) at ¶¶ 1-2. As part of his practice defendant submitted claims to certain licensed insurance companies ("Health Care Benefit Programs") for services "defendant claimed were provided to patients." Id. at ¶¶ 3-4. The claims for payment contained the required personal information of the insured as well as the standard codes for the procedures performed. Id. at ¶¶ 5-6. During the years in question the standard codes included identified procedures for "extractions" and "surgical extractions." Id. at ¶ 7-8. The insurance companies relied on "the good faith and honesty of dentists and oral surgeons to truthfully and accurately state on each claim form all of

the requested information including a truthful and accurate dental diagnosis code and a truthful and accurate [Code on Dental Procedures and Nomenclature]" ("CDT").

The indictment further charges at count one that defendant devised a scheme to defraud the Health Care Benefit Programs in connection with the delivery of and payment for dental health care benefits. Id. at ¶ 12. As part of the scheme, defendant is charged with having submitted billings for surgical extractions

> 13. . . . that represented that the defendant had performed a surgical extraction of a tooth, when in truth and in fact, as the defendant well knew, the procedure involved a baby tooth that did not require a surgical extraction for removal.
>
> 14. . . . that represented that the defendant had performed a surgical extraction of a tooth, when in truth and in fact, as the defendant well knew, the procedure involved a patient with bone loss such that a surgical extraction was not necessary for removal of the involved tooth.
>
> 15. . . . that the defendant had performed a surgical extraction of a tooth, when in truth and in fact, as the defendant well knew, the procedure involved a coronal remnant that did not require a surgical extraction for removal.

Id. at ¶¶ 13-15. Defendant did not routinely write notes about such procedures, leaving such tasks to his dental assistants. Defendant submitted "fraudulent bills totaling in excess of approximately $232,674" in furtherance of this scheme. Id. at ¶ 17.

The false statement claims charged at counts two through twenty-seven incorporate the allegations at paragraphs 1 through 17. Id. at ¶ 18. It is further charged that beginning in January of 2008 and continuing to in and around June of 2014 defendant knowingly and willfully caused materially false and fraudulent statements and representations to be made in connection with

> the delivery of and payment for health care benefits and services, in that the defendant submitted and caused to be submitted dental insurance claims in connection with health care benefit programs in which he sought payment for dental services and certified that the claimed services were provided, when in fact, he knew said services actually had not been provided to patients, and did so, for example, on or about the dates and in the manner set

2

forth below for each representative false claim, each such false claim representing a separate Count of this Indictment . . . .

Id. at ¶ 19. Each separate count identifies the date of claim, the patient's initials, and the nature of the false claim, including the CDT, the specific tooth claimed to be involved, and the condition represented to have given rise to the asserted need for the oral surgery. Id. at ¶¶ 2-27.

Defendant moves to dismiss counts two through twenty-seven on the assertion that "those counts are inherently inconsistent and directly contradict the allegations in count 1, and thus violate the Constitutional due process rights of the defendant . . . ." Motion to Dismiss (Doc. No. 18) at 1. He reasons that at count one the grand jury identified various instances where defendant preformed procedures that, although performed, were not required or necessary and at counts two through twenty-seven it returned charges based on procedures that defendant "did not perform" or were not required for removal of the tooth in question. Memorandum in Support of Motion to Dismiss (Doc. No. 19) at 2. Based on this perception, defendant maintains that he seemingly has been charged with inherently inconsistent courses of conduct and has not been sufficiently apprised of what he must be prepared to meet at trial.

The government counters that the indictment satisfies the requirements in the Federal Rules of Criminal Procedure and purportedly sets forth consistent allegations that easily satisfy the rudimentary demands of due process. It cites authority setting forth the information an indictment must contain to satisfy the basic demands of due process: to wit, an indictment must (1) set forth the elements of the offense intended to be charged, (2) sufficiently apprise the defendant of what he must be prepared to meet, and (3) allow the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution. See, e.g., United States v. Huet, 665 F.3d 588, 594-

3

95 (3d Cir. 2012) (citing United States v. Vitillo, 490 F.3d 314, 321 (3d Cir. 2007)). It further references the precedent establishing that in a charging instrument "no greater specificity than the statutory language is required so long as there is sufficient factual orientation" to permit a defendant to prepare his defense and invoke double jeopardy. United States v. Kemp, 500 F.3d 257, 280 (3d Cir. 2007) (quoting United States v. Rankin, 870 F.2d 109, 112 (3d Cir. 1989)). And it points out that an indictment will be deemed to have satisfied these requirements where it informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violation allegedly has occurred. See, e.g., United States v. Urban, 404 F.3d 754, 771 (3d Cir. 2005.

Based on these basic tenants, the government maintains that defendant's motion to dismiss must be denied because he sufficiently has been apprised of the elements of the charges and supplied with sufficient factual orientation to prepare a defense to the charges. It explains:

> Count one of the indictment sets forth in detail the allegations that comprise Palo's health care fraud scheme. The indictment alleges several different ways in which Palo committed health care fraud by falsely billing for surgical extractions. First, Palo billed for surgical extractions involving baby teeth that did not require surgical extraction. Second, Palo billed for surgical extractions involving patients with bone loss such that surgical extraction was not necessary for removal of the involved tooth. Third, Palo billed for surgical extractions involving coronal remnants that did not require surgical extraction. The allegations contained in count one of the indictment do not indicate that Palo actually performed surgical extractions that were not necessary or required. Rather, the obvious thrust of the allegations in count one is that Palo billed for surgical extractions that were not performed. The allegations contained in counts two through twenty-seven specifically allege that Palo billed for services that had not actually been provided to patients. Nothing in the language of count one and counts two through twenty-seven is inconsistent. Count one does not allege that Palo actually performed surgical extractions. Thus, the allegations in counts two through twenty-seven that he sought payment for services that were not actually provided is consistent with the allegations at count one. There simply is no contradiction between count one and the remaining counts.

4

An indictment does not have to be perfectly drafted. Palo's indictment is extremely detailed and provides more than enough information for him to prepare a defense and avoid double jeopardy in the future. That is all that is required. Moreover, the government has now set forth its theory of the case so there is no danger that Palo will be unable to prepare a defense.

Government's Brief in Opposition (Doc. No. 28) at 4-5.

We reject the government's position. The scheme of health care fraud set forth at count one appears to be predicated on conduct that involved the performance of dental services that were unnecessary or not required. In other words, the language employed indicates the scheme was to perform and receive payment for services that were unnecessary and to do so in a manner that was calculated to deceive or defraud, i.e., fraudulently padding the bill.

In contrast, counts two through twenty-seven are predicated on the accusation that defendant "certified that the claimed services were provided, when in fact, he knew said services actually had not been provided to patients . . . ." Indictment at ¶ 19. In other words, billing for services that had not been performed.[1]

The government's contention that the court should simply read the language in count one as charging only a fraudulent scheme of willfully billing for services that defendant actually knew had not been performed is untenable for a number of reasons. First, the statute underlying the charge at count one reaches and criminalizes both forms of fraud. Section 1347 provides:

---

[1] Counts two through seven, fifteen through sixteen, twenty-one through twenty-four and twenty-seven charge a false statement for claiming that a service "was performed" when it was not; in contrast, counts eight through fourteen, seventeen through twenty and twenty-five through twenty-six identify the false statement as surgical extraction "was required to remove tooth . . . ."

> [w]hoever knowingly and willfully executes, or attempts to execute, a scheme or artifice-
>
>> (1) to defraud any health care benefit program; or
>>
>> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
>
> in connection with the delivery of or payment for health care benefits, items, or services, shall be [guilty of an offense].

18 U.S.C. § 1347. The elements of this offense are (1) the defendant executed or attempted to execute a scheme to defraud or obtain by means of false or fraudulent pretenses money or property under the custody or control of any health care benefit program; (2) the defendant acted with the intent to defraud; and (3) the execution or attempted execution was directed at an individual or entity that was a health care benefit program. Third Circuit Criminal Model Jury Instructions § 6.18.1347.

A scheme to defraud or obtain money or property by false or fraudulent pretenses has been very broadly defined. The United States Court of Appeals for the Third Circuit has defined a "scheme to defraud" as one involving any effort at deceit which aims, at least in part, to deprive another of money or property. United States v. Hedaithy, 392 F.3d 580, 590-91 (3d Cir. 2004). To constitute such a scheme, the orchestrated conduct need not be "fraudulent on its face"; instead, it only "must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 528 (3d Cir. 1998) (quoting Kehr Packages, Inc. v. Fidelcor, 926 F.2d 1406, 1415 (3d Cir. 1991)). In this regard "the words 'to defraud' . . . have the common understanding of wronging one in his property rights by dishonest methods or schemes,

and usually signify the deprivation of something of value by trick, deceit, chicane or overreaching." Carpenter v. United States, 484 U.S. 19, 27 (1987) (internal quotation omitted). And a "scheme to defraud" premised on "fraudulent representations" can be perpetuated "by deceitful statements, half-truths, concealment of material facts, fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." United States v. Bryant, 556 F. Supp.2d 378, 431 (D.N.J. 2008) (quoting United States v. Olatunji, 872 F.2d 1161, 1167 (3d Cir. 1989) and United States v. Stackpole, 64 F. Appx. 842, 842–843 (3d Cir. 2003)). In other words, such a scheme "need not involve affirmative misrepresentation." Id. (citing Stackpole, 64 F. Appx. at 842-43).

It follows that the Health Care Fraud offense set forth at 18 U.S.C. § 1347 makes criminal the attempted execution of a scheme to obtain money for health care services that were actually performed and by trick, deceit, chicane or overreaching were made by the provider to appear as if they were required or necessary for the procedure performed when in fact such services were not required or necessary. Execution of such a fraudulent scheme to gain payment for non-required or unnecessary services falls within the ambit of the statute.

Second, a review of the language employed by the grand jury in returning count one indicates that it may well have intended to charge defendant with executing or attempting to execute just such a scheme. An indictment is to be reviewed "using a common sense construction." United States v. Hodge, 211 F.3d 74, 76 (3d Cir. 2000). In undertaking this inquiry undefined words used in a statue are to be given their "ordinary or natural meaning." Smith v. United States, 508 U.S. 223, 228 (1993). Words used in an

7

indictment are to be interpreted in the same fashion. United States v. Segura, 2016 WL 1623182, *6 (W.D. Pa., April 25, 2016) (Fischer, J.) (citing Fed. R. Crim. P. 7). In the end, the court's role is to "examine the [statutes at issue] as applied to the facts as alleged in the Indictment, and determine whether Defendants' conduct, as charged, 'reflect[s] a proper interpretation of criminal activity under the relevant criminal statute[s].'" United States v. Delle Donna, 2008 WL 1961485 at *4-5 (quoting United States v. Wecht, No. 06–0026, 2007 WL 3125096, *5 (W.D. Pa. Oct. 24, 2007) (citing United States v. Panarella, 277 F.3d 678, 685 (3d Cir. 2002)).

The word used in the indictment connote distinct forms of criminal conduct. For example, counts two through seven, fifteen through sixteen, twenty-one through twenty-four and twenty-seven clearly charge that defendant made a false statement that surgical extraction was performed when he knew that no surgical extraction had been performed on the patient on the date in question. And as qualified by paragraph 19 of the indictment, counts eight through fourteen, seventeen through twenty and twenty-five through twenty-six must be understood to convey that the statement that surgical extraction "was required to remove tooth . . . . " was made false by the fact that defendant well knew that a surgical extraction had not been performed. Thus, these counts comprehensively charge a series of statements rendered false by the knowing lack of performance.

In contrast, count one unqualifiedly is premised on a course of conduct that was not "required" or "necessary." These words signify a different course of conduct. The word require is defined as "need" or depend on for success. See The Oxford Dictionary and

8

Thesaurus.² Thus, something that was required is understood to mean that which was needed or dependent for a successful outcome.

Necessary denotes a substantially similar understanding. It is defined as "requiring to be done, achieved, etc.; requisite; essential (*it is necessary to work; lacks the necessary documents*)." Id. (emphasis in original). Thus, something that was necessary is understood to mean that which was required to be done or achieved, a requisite or essential component for completion.³

The phrasing used in count one clearly identifies a scheme to defraud that was predicated on claims for payment for surgical extractions that were not required or necessary to the ultimate goal of tooth removal. In other words, the scheme was to perform services that were not required or unnecessary to achieve the dental undertaking at hand and then seek payments for those services. For example, performing a surgical extraction where only an extraction was necessary and fraudulently claiming surgical extraction as being required under the circumstances.

In the abstract, these two schemes/forms of false statements are not mutually exclusive. One could easily devise a scheme that perpetrates both of these types of deceit in various instances. And the Health Care Fraud and False Statements statutes clearly make illegal both fraudulently claiming services were necessary or required when they were not and claiming that services actually had been performed when they were not. In other words, a defendant could be charged with perpetrating both forms of fraud in the

---

² Synonyms include need and necessitate. Id.
³ Synonyms for necessary include indispensable, essential, required, needed and compulsory. Id.

same indictment and indeed the current indictment can be interpreted as charging these separate forms of conduct in violation of the statutes.

Nevertheless, the indictment can and must be construed as internally inconsistent when count one is compared with counts two through twenty-seven. Count one defines the scheme as encompassing code D7210 signifying surgical extraction for tooth removal that was not required or necessary for removal of a baby tooth, a patient with bone loss, and a patient presenting with a coronal remnant. Counts two through twenty-seven likewise are predicated on code D7210 involving false claims that surgical extraction actually was performed for "an erupted baby tooth" or to remove a specific tooth. Thus, in count one defendant is charged with fraudulently seeking reimbursement for a procedure that was not required or necessary, whereas in counts two through twenty-seven defendant is charged with making a false claim that a surgical extraction was performed when it was not.[4]

"An indictment is defective if it contains logically inconsistent counts." United States v. Conde, 309 F. Supp.2d 510, 511 (S.D. N.Y. 2003) (citing United States v. Cantrell, 612 F.2d 509, 511 (10th Cir. 1980) and United States v. Eason, 434 F. Supp. 1217, 1221 (W.D. La. 1977)). Such inconsistency in a charging instrument fosters confusion for both the defendant and the jury. Eason, 434 F. Supp. at 1221. It likewise presents a real potential for prejudice because a defendant may be confounded or

---

[4] As previously noted, counts eight through fourteen, seventeen through twenty and twenty-five through twenty-six charge the false statement as "surgical extraction was required to remove tooth." While this language appears to track the charge in count one, the language in these counts is unconditionally qualified by the accusation in paragraph 19 that "defendant sought payment for dental services and certified that the claimed services were provided, when in fact, he knew said services actually had not been provided to patients [on each of the specified dates in counts two through twenty-seven]." Thus, these counts must be understood as referring to a false statement that services were provided when defendant knew in fact they had not been so provided.

10

embarrassed in having to present separate defenses, such as wishing to testify in response to one charge but not the other. Id. And such prejudice is only exacerbated where exculpatory testimony on one count has the real potential to be incriminating as to another count. Conde, 309 F. Supp.2d at 511-12; Cantrell, 612 F.2d at 511.

Here, the potential for substantial prejudice arises from the seemingly inconsistent courses of conduct charged in count one and the remaining counts. The time frames for each of these groups of charges are identical. Indictment (Doc. No. 1) at ¶¶ 12, 19. The logical inference raised from a comprehensive review of the indictment is that the accusations are interrelated and arise from the same course of conduct. Any doubt is removed by the government's response, which indicates all of the counts are based on the same course of conduct. Government's Brief in Opposition (Doc. No. 28) at 4-5.

But as defendant aptly notes, according to the grand jury defendant is accused at count one of implementing a scheme based on the necessity of the surgical extractions, rather than proceeding with and billing for the simple and less expensive extractions that could have resulted in the tooth removal; nowhere in count one is defendant accused of billing for a procedure that he did not perform — he is charged with seeking payment for procedures that were not required or necessary "in connection with *the delivery of and payment for* health care . . . services." Indictment (Doc. No. 1) at ¶ 12 (emphasis added). In direct contradiction, counts two through twenty-seven charge false statements involving the same dental procedures that expressly are limited to defendant claiming a surgical extraction was performed when he did not perform a surgical extraction. Indictment (Doc. No. 1) at ¶ 19.

The government's effort to cure this defect in the charging instrument by positing its theory of the case falls short. The inconsistency arises from the specific language in the indictment that the grand jury returned. The government's purported intent to pursue only a non-performance theory at trial does not eliminate the inconsistency, ongoing uncertainty and ultimate potential for confusion at trial. Proceeding in that matter only invites further legal challenges and unnecessarily burdens the court's currently taxed workload. <u>Cf. Cantrell</u>, 612 F.2d at 511 ("However, when a defendant is charged with apparently inconsistent counts in a single indictment and the government removes the inconsistency only at trial, if at all, we cannot say that the defendant 'could . . . have anticipated what the evidence would be at trial.' . . . We cannot say that the unfairness involved in the substantial variance between the indictment on the one hand and the government's theory on the other hand is sufficiently harmless . . . .") (citing <u>United States v. Freeman</u>, 514 F.2d 1184 (10th Cir. 1975)). We have not been able to discern any sound reason for proceeding in such a manner.

The government's contention that count one should be interpreted as consistent with counts two through twenty-seven because "[c]ount one does not allege that Palo actually performed surgical extractions that were not necessary or required" misses the point. The use of language employed in count one must be interpreted according to its common and natural meaning. At best, the accusations comprising count one leave one to speculate whether in the course of the scheme the actual service had or had not been performed. More importantly, the accusations that defendant sought payment for surgical extractions that were not "necessary" or "required" denotes a billing scheme that was predicated on actual performance. And unlike the qualification that paragraph 19 places on the

remaining counts, nothing in the accusations comprising count one alters the connotations that flow from the natural and common meaning of the words the grand jury chose to employ. Given this state of affairs, the court is not a liberty to ascribe an unnatural or unusual meaning to the words and phrases used to identify the conduct underlying count one. See Cantrell, 612 F.2d at 511 (absent statutory authority, due process prohibits ascribing an unnatural meaning to words that have a common usage and accepted understanding).

While the government can alter the meaning of the words used in formulating the accusations contained in the charging instrument, it has not done so as to count one. Count one charges defendant with executing a scheme to defraud based on the performance of dental procedures that were not required or necessary; the remaining counts charge defendant with making false statements by claiming surgical extraction when it was not performed. As currently drafted, the indictment is inconsistent and therefore defective because it charges defendant with fraud and false statements based on performance and non-performance of the same procedures. A defendant cannot be called upon to prepare a defense to such inconsistent courses of conduct. See Conde, 309 F. Supp.2d at 511-12.[5]

Defendant's strategic request for the dismissal of counts two through twenty-seven must be rejected. Upon the presentation of such prejudice Federal Rule of Criminal Procedure 14 permits the court to fashion appropriate relief, including to 1) order the

---

[5] Analyzing the issues raised under the authorities advanced in the government' response does not product a different outcome. Taking the government's theory of the case at face value, the language employed in count one neither sufficiently apprises defendant of what he must be prepared to meet at trial nor allows him to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution based on the alternative theory of executing the fraudulent scheme.

13

government to make an election between the counts or 2) hold separate trials on the counts. Eason, 434 F. Supp. at 1221; Fed. R. Crim. P. 14. Seeking a superseding indictment also is an avenue the government may pursue. See Conde, 309 F. Supp.2d at 512 ("We therefore dismiss Count Two of the indictment without prejudice to the government's filing a superseder that ascribes non-overlapping dates to the two offenses charged.").[6] Permitting defendant to have carte blanche authority over which of the inconsistent counts the government will be permitted to pursue and attempt to prove at trail would be an inappropriate exercise of our Rule 14 discretion. Accordingly, the government will be ordered to make an election as to which alternative subset of the counts it will proceed to trial with first.

For the reasons set forth above, defendant's motion will be granted in part as follows: the government will be ordered to make an election as to which of the following subsets of the counts – count one or counts two through twenty-seven – it desires to proceed to trial with first. The court will take the balance of defendant's motion under advisement and determine whether further relief should be granted after the government has made its election and a status conference with counsel has been held. The motion will

---

[6] The court has given careful consideration to whether the defect in the charging instrument can be cured through relief pursuant to defendant's pending motion for a bill of particulars and concluded that correcting the highlighted inconsistency is beyond the reach of the motion. A bill of particulars "can neither add to nor subtract from the indictment nor change the crime charged." United States v. Critchley, 353 F.2d 358, 362 (3d Cir. 1965). The defect highlighted above pertains to the identification of the charged scheme to defraud and the nature of the false statements accompanying the implementation of that scheme. Thus, it is beyond the reach of a bill of particulars. Id. ("An indictment may not be amended except by resubmission to the grand jury.") (citing Russell v. United States, 369 U.S. 749, 770 (1962)).

be denied to the extent it seeks other inconsistent relief.  An appropriate order will follow.

<u>Date: December 26, 2017</u>

<u>s/David Stewart Cercone</u>
David Stewart Cercone
Senior United States District Judge

cc: Christian A. Trabold, AUSA
David G. Ridge, Esquire
Michael A. Agresti, Esquire

(*Via CM/ECF Electronic Mail*)